**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Frank Serafine,<br><br>Plaintiff,<br><br>v.<br><br>Transdev Services Incorporated, et al.,<br><br>Defendants. | No. CV-25-02286-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a Rule 12(b)(6) motion to dismiss filed by Defendants Regional Public Transportation Authority ("RPTA") and Valley Metro Rail, Inc. ("Valley Metro") (together, "Movants"). (Doc. 15.) About two months after that motion became fully briefed, Plaintiff filed a motion for leave to amend. (Doc. 38.) For the reasons that follow, the Court will grant Plaintiff's amendment request, treat Movants' motion to dismiss as pertaining to Plaintiff's new pleading, and grant Movants' motion.

**RELEVANT BACKGROUND**

I.  <u>The Complaint</u>

Plaintiff, an attorney (Doc. 1 ¶ 184) who is proceeding *pro se*, initiated this action in July 2025. Four named defendants are identified in the 36-page, 456-paragraph complaint: (1) Transdev Services, Inc. ("Transdev"), (2) City of Phoenix ("the City"); (3) RPTA; and (4) Valley Metro. (*Id.* at 1.)[1]

---

[1] The complaint also names "Jane Doe and Jane Doe Spouse," but those fictional defendants have since been dismissed for lack of service. (Doc. 37.)

1	The event giving rise to this lawsuit occurred on March 12, 2025. (*Id.* ¶ 124.)
2	Plaintiff, who is "Caucasian" and "white in color," alleges that he boarded Bus 5016 (which
3	is owned by the City) at a bus stop in central Phoenix with the intent of traveling to the
4	Maricopa County Superior Court in downtown Phoenix; that he "paid the $2 fare by
5	placing a reloadable smart card," called the "Copper Card," "over the fare reader
6	validator"; and that he then rode the bus for a period of time, pulled the bell cord to indicate
7	he was ready to exit, and "queued at the rear side doors" as the bus came to a stop. (*Id.*
8	¶¶ 114, 124-51, 177, 181, 183, 200.) Plaintiff alleges that the bus driver, "an African-
9	American female," did not immediately "open the doors for [him] because he is
10	Caucasian," and that when the doors eventually opened and he began to exit, the doors
11	quickly closed, striking him and causing him to suffer "discomfort" and "humiliation." (*Id.*
12	¶¶ 130, 152-71, 219.) Plaintiff alleges that although he previously rode the bus with some
13	frequency, he stopped riding the bus after the March 12, 2025 incident. (*Id.* ¶¶ 191, 199,
14	210.)
15	As for each Defendant's involvement in the underlying incident, Plaintiff alleges
16	that the City owned the bus in question and that Transdev—which "is a common carrier of
17	local bus transit passengers in Phoenix" pursuant to various contracts with the City—was
18	the bus operator. (*Id.* ¶¶ 114, 116-22.) As for Movants, Plaintiff alleges that they "are two
19	separate entities but combined their administrative and executive functions in 2012"; that
20	they entered into a partnership with the City in 2018 to develop a "replacement fare
21	collection system"; and that the Copper Card eventually emerged as such a system. (*Id.*
22	¶¶ 252-326.) Plaintiff further alleges that the reverse side of the Copper Card falsely states
23	that the "full terms and conditions" can be found at a certain website; that the actual terms
24	and conditions (which Plaintiff refers to by the acronym "VMAT&C") appear on a
25	different website; and that the actual terms and conditions include a "Limitation of
26	Liability" section that purports to shield the Movants and the City from liability to
27	passengers for any damages under any legal theory. (*Id.*)
28	Based on these allegations, Plaintiff asserts nine causes of action. In Counts One

through Five, Plaintiff asserts various state-law tort claims (false imprisonment, assault, battery, negligence, negligence per se) against Transdev and the City. (*Id.* ¶¶ 328-97.) In Count Six, Plaintiff asserts a breach-of-contract claim against Transdev, the City, and RPTA, under the theory that they "breached an implied contract of carriage." (*Id.* ¶¶ 398-409.) In Count Seven, Plaintiff asserts a claim under Title VI of the Civil Rights Act of 1964 against all four Defendants, under the theory that they "subjected [him] to intentional discrimination . . . due to race, color, and/or national origin" when conducting "programs and activities . . . (the bus and fare collection system) [that] received federal financial assistance." (*Id.* ¶¶ 410-14.) In Count Eight, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the City, RPTA, and Valley Metro for "Civil Rights Conspiracy," alleging that each defendant "conspired in Arizona for the purpose of depriving Plaintiff of the equal protection of the laws," of his constitutional right to travel, and of his constitutional right to petition the courts for redress. (*Id.* ¶¶ 415-34.) Plaintiff further alleges that each defendant furthered the conspiracy by writing (or causing to be written) the VMAT&C and posting (or causing to be posted) the VMAT&C on the internet. (*Id.*) In Count Nine, Plaintiff asserts a claim under 42 U.S.C. § 1985(3) against the City, RPTA, and Valley Metro for "Civil Rights Conspiracy," this time alleging that each defendant conspired to deprive him "and bus passengers" of the constitutional rights identified in Count Eight, that "[t]he conspiracy was motivated, in part, by racial animus in that the majority of bus passengers are minorities," and that "Plaintiff has standing to bring this claim in order to protect minorities." (*Id.* ¶¶ 435-56.)

II.     Procedural History

On July 25, 2025, Movants filed the pending motion to dismiss. (Doc. 15.) On August 13, 2025, that motion became fully briefed. (Docs. 20, 21.) Neither side requested oral argument.

On October 7, 2025, Plaintiff filed the pending motion for leave to amend. (Doc. 38.) Plaintiff only requests leave to make one minor change that has nothing to do with the grounds raised by Movants for seeking dismissal. (Doc. 38-1 at 16.)

On October 21, 2025, Movants filed an opposition, which is premised mostly on their concern that the filing of an amended pleading could "derail the pending Motion to Dismiss by mooting it, unfairly prejudicing [them] with additional time and expense." (Doc. 41 at 2.) Movants contend, however, that the Court can avoid this concern by "simply . . . consider[ing] the motion as being addressed to the amended pleading." (*Id.* at 3 n.1, citation omitted.)

Transdev and the City did not file an opposition to Plaintiff's amendment request and the time to do so has expired. Plaintiff did not file a reply to Movants' opposition and the time to do so has expired.

**DISCUSSION**

I.  Plaintiff's Motion For Leave To Amend

Plaintiff seeks leave to file a First Amended Complaint ("FAC"). (Doc. 38.) The only difference between the proposed FAC and the original complaint is the elimination of one discrete factual allegation regarding Plaintiff's income level. (Doc. 38-1 at 16.)

The decision whether to grant leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

The only concern raised by Movants is that if Plaintiff's amendment request were granted, this might require them to refile their motion to dismiss (which would, in turn, cause delay and increased expense). However, Movants also propose a solution that would avoid this concern—authorizing the amendment but then treating their existing motion to dismiss as applying equally to the FAC. Although this is not the usual method for handling this situation, *see generally Arizona v. Mayorkas*, 2022 WL 18456040, *2 (D. Ariz. 2022)

("[I]f the State's contested amendment request is granted, this will . . . moot Defendants' unresolved request to dismiss Counts Three and Six of the FAC, without prejudice to Defendants' ability to seek dismissal of Counts Three, Five, and Six of the re-filed SAC.") (citing *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015)), it is permissible when, as here, "the amended complaint is substantially identical to the original complaint." *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099, 1108 (W.D. Wash. 2023) (cleaned up). *See generally* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1476 (3d ed.) (Sept. 2025 update) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance."). Moreover, Plaintiff did not file a reply to express any opposition to Movants' proposal. Accordingly, Plaintiff's amendment request is granted, and the Court will treat Movants' motion to dismiss as applying to the now-authorized FAC.

II.   Movants' Motion To Dismiss

    A.   **Standard Of Review**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

### B. The Parties' Arguments

Movants seek the dismissal of all of the claims asserted against them. (Doc. 15.) Movants' overarching argument is that they had nothing to do with the operation of the bus involved in the underlying incident—they "do not own the bus in question, do not provide service for the route in question, and do not employ the bus driver in question"—and that their only attenuated relationship to this case is that they provide "unified online fare vending services, aka Copper Card" to the City and Plaintiff happened to "use[] a Copper Card as fare for his ride." (*Id.* at 2-3.) Turning to Count Six, RPTA contends that Plaintiff has failed to allege a plausible contract claim because any contractual duty it owed to Plaintiff was limited to "provid[ing] valid fare in satisfaction of any agreement per the parties"—a duty it fulfilled once Plaintiff was able to use the Copper Card to board the bus—and that this contractual duty did not encompass "what happened on the bus." (*Id.* at 4-5.) As for Count Seven, Movants argue that even if the alleged conduct by the bus driver could be said to qualify as intentional discrimination, the complaint fails to plausibly allege why they should be held responsible for that conduct: "Understanding that [Movants] had no connection to the actual bus ride on March 12, 2025, all that remains is [Movants'] terms and conditions for the Copper Card program . . . [but Plaintiff has not] cited any instance of intentional discrimination in [those] guidelines (much less that discrimination was so severe that Plaintiff could not purchase fare), or alleged any factual basis that [Movants] had knowledge of the severe discrimination and [were] deliberately indifferent to it." (*Id.* at 5-6.) Finally, as for Counts Eight and Nine, Movants argue that "Plaintiff has not stated any facts how the usage guidelines for the Copper Card program actually violate Plaintiff's or any other person's constitutional rights, how Plaintiff has standing to represent racial minorities, or what [Movants] actually did that constitutes conspiracy with [the City] other than legal conclusions." (*Id.* at 6.) Movants conclude: "The difference between the Complaint's four hundred and fifty six paragraph disregard of

1 Rule 8's admonition for short and plain pleadings versus the dearth of actual, plausible
2 claims against [Movants] is stark, and telling. [Movants] had nothing to do with whatever
3 happened on the bus March 12, 2025, and there is no basis to suggest that [Movants'] fare
4 guidelines contributed to those events, or are discriminatory in and of themselves, no
5 amount of surplusage to the contrary. . . . No amount of amendment will cure these
6 deficiencies." (*Id.* at 7.)

7 Plaintiff's discussion of Count Six consists of criticizing Movants for not identifying
8 the elements to establish the existence of a contract; emphasizing that the covenant of good
9 faith and fair dealing is implied in every contract in Arizona; citing a 1939 case from New
10 York in which a plaintiff was allowed to assert a breach of contract claim against a bus
11 operator over that defendant's objection that the misconduct was committed by the
12 employees of an independent connecting line; and arguing that it is thus "plausible that
13 RPTA breached the covenant of good faith and fair dealing when the bus driver lied to
14 Plaintiff about the bus stop and battered him." (Doc. 20 at 7-9.) As for Count Seven,
15 Plaintiff argues that individuals have a private right of action under Title VI; that the
16 complaint plausibly alleges that the bus driver engaged in intentional discrimination; and
17 that Movants may be held liable because "Plaintiff used his Copper Card on the bus." (*Id.*
18 at 9-10.) As for Counts Eight and Nine, Plaintiff begins by emphasizing that the VMAT&C
19 contains more words than the Constitution. (*Id.* at 10-11.) For reasons that are unclear,
20 Plaintiff then attempts to draw a connection between the "unfortunate" constitutional
21 provision that only counted three-fifths of the enslaved population for certain purposes and
22 the fact that 60% of transit riders are minorities. (*Id.* at 11.) Plaintiff then contends that
23 the VMAT&C deterred him from filing this lawsuit (because it created uncertainty about
24 which court would have jurisdiction); "acknowledges that neither the United States
25 Supreme Court nor the Ninth Circuit has decided whether" there is a right to intrastate
26 travel; contends that the VMAT&C has dissuaded him from continuing to use transit
27 services; argues that the existence of a conspiracy can be inferred; argues that Movants
28 engaged in various deceptive tactics when drafting and publicizing the VMAT&C; argues

that this case presents a "unique situation" that justifies deviation from the "ordinary rule" prohibiting one plaintiff from asserting claims on behalf of third parties; and clarifies that he "is asking this Court to recognize bus passengers as a class." (*Id.* at 11-15.) Last, Plaintiff asserts that he "is a competent attorney." (*Id.* at 16.)

In reply, Movants summarize their position as follows: "Instead of well-pleaded facts, the Response returns to an irrelevant and speculative narrative based on Plaintiff's dislike of the terms and conditions of [Movants'] ticketing system that was inexplicably designed to deny service to the very riders Plaintiff admits were being provided service on the date of the incident. Plaintiff has alleged no specific facts that support any plausible claims of breach of contract, civil rights violations, or conspiracy against [Movants]." (Doc. 21 at 2.)

C. **Analysis**

All of Plaintiffs' claims against Movants are subject to dismissal for failure to state a claim. As for Count Six, the Court agrees with Movants' argument that "[a]though the Copper Card is Plaintiff's only conceivable Valley Metro link to this matter, after pages and pages of speculative narrative, Plaintiff fails to allege, much less plausibly, . . . what (if any) of the terms were breached, or how they caused any damage." (Doc. 21 at 4.) Indeed, even assuming RPTA formed a contractual relationship with Plaintiff by virtue of its connection to the Copper Card, that contractual relationship at most encompassed an agreement to allow Plaintiff to use the money he deposited on his Copper Card as bus fare. The allegations in the complaint show that RPTA fulfilled that duty. (Doc. 38-1 ¶ 129 ["Upon boarding the bus, Plaintiff paid a $2 fare by placing a reloadable smart car ('Copper card') over the fare reader validator."].) Plaintiff has thus failed to plausibly allege the existence of a breach, one of the essential elements of any contract claim. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) ("It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages.").

As for Count Seven, "[t]o state a claim for damages under 42 U.S.C. § 2000d, *et*

*seq.*, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc). As for the first element, "[a]lleging racial discrimination requires the complaint to plead facts supporting a reasonable inference that defendants' purported misconduct was racially motivated." *Prather v. Mirkil*, 2020 WL 1862692, *2 (D. Nev. 2020). Where a complaint "does not allege facts sufficient to support a reasonable inference that [the defendant] had actual notice of an employee's racial discrimination and was deliberately indifferent," the complaint "fail[s] to state a Title VI disparate treatment claim." *Marks v. Santa Rosa City Schs.*, 748 F. App'x 159, 161 (9th Cir. 2019). The FAC does not come close to satisfying those requirements in relation to Movants. Even assuming the FAC plausibly alleges that the bus driver engaged in intentional discrimination, there is no allegation that the bus driver is employed by Movants or that Movants had notice of the bus driver's conduct (or any prior, similar conduct by the bus driver). Nor does the FAC plausibly allege that the terms and conditions of the Copper Card program, or indeed anything to do with the Copper Card program, amount to intentional racial discrimination.

For similar reasons, Counts Eight and Nine fail to state a claim. Plaintiff seeks to conjure a civil rights conspiracy between three different entities, which somehow implicates the constitutional rights to equal protection, to travel, to petition the courts for redress of grievances, and to be free of racial discrimination, by lumping together a one-time negative experience during a bus ride (to which Movants are only tangentially connected, as a result of Plaintiff's use of the Copper Card to pay the bus fare) and Plaintiff's dissatisfaction with the wording and location of the Copper Card's terms and conditions. These claims fail because "[a] mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). Additionally, and more broadly, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience

and common sense." *Iqbal*, 556 U.S. at 663-64. As Movants persuasively argue in their reply, "[c]ommon sense dictates that Claims 8 and 9 fail to state plausible conspiracy claims against [Movants]." (Doc. 21 at 5.)[2]

### D. **Further Leave To Amend**

Movants contend that Plaintiff's claims against them should be dismissed with prejudice and without leave to amend. (Doc. 15 at 7.) In his response, Plaintiff does not request leave to amend or seek to identify any new facts he might be able to allege in an effort to cure the asserted deficiencies identified by Movants—instead, Plaintiff only attempts to defend the sufficiency of his existing allegations. (Doc. 20.) Likewise, Plaintiff's subsequent, formal amendment request (Doc. 38) has nothing to do with the grounds raised by Movants for seeking dismissal.

Despite these omissions, the rule in the Ninth Circuit is that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). Thus, the Court must consider *sua sponte* whether Plaintiff should be allowed to file a Second Amended Complaint ("SAC") in an attempt to salvage his claims against Movants.

As noted, Rule 15(a) creates a liberal amendment standard under which leave to amend should be granted unless the amendment would prejudice the opposing party, is sought in bad faith, would produce an undue delay in litigation, or is futile. Applying those standards, the Court agrees with Movants that further leave to amend should be denied on futility grounds. Plaintiff's own allegations make clear that he lacks a valid contract claim against RPTA. Nor can the Court imagine a scenario in which Plaintiff would be able to allege new facts sufficient to rope Movants into his Title VI and civil rights conspiracy claims, given that their only attenuated relationship to this case is the Copper Card.

In reaching this conclusion, the Court acknowledges that Plaintiff is proceeding *pro*

---

[2] Movants also identify various other shortcomings with Counts Eight and Nine, but it is unnecessary to go into detail regarding those shortcomings in light of the deficiencies identified above.

- 10 -

*se* and has not previously received judicial notice of the deficiencies in his claims against Movants. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992) ("[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively."). But Plaintiff is no ordinary *pro se* litigant—he is a licensed attorney[3] and emphasizes in his response brief that he "is a competent attorney." (Doc. 20 at 16.) The Ninth Circuit has "declined to extend the liberal pleading standard to pro se attorneys . . . . There is a good reason that we afford leeway to pro se parties . . . [but] [t]hat logic does not apply to practicing attorneys, nor should the grace extend to them." *Huffman v. Lindgren*, 81 F.4th 1016, 1020-21 (9th Cir. 2023). The futility of amendment is thus reason enough to disallow further amendment as to Movants.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion for leave to amend (Doc. 38) is **granted**.

2. Within 14 days of the issuance of this order, Plaintiff shall file, on the docket, a clean (non-redlined) version of the FAC that he previously filed at Doc. 38-1.

3. RPTA's and Valley Metro's motion to dismiss (Doc. 15), which the Court construes as applying to the FAC, is **granted**.

4. RPTA and Valley Metro are **dismissed from this action**.

Dated this 24th day of November, 2025.

_____
Dominic W. Lanza
United States District Judge

---

[3] *Mr. John F Serafine*, State Bar of Arizona (last visited Nov. 20, 2025) [https://perma.cc/4LCH-2PRP?type=image] (Arizona bar directory, showing active status as of November 20, 2025).